STATE ex rel. OKLAHOMA EMPLOY-
MENT SECURITY COM. v.
PARRISH et al.

No. 33210.   June 14, 1949.

*208 P. 2d 572.*

Bruton Wood, Burton Duncan, and Gerald S. Tebbe, all of Oklahoma City, for plaintiff in error.

Conner, Winters, Lee & Randolph and Hess Crossland, all of Tulsa, for defendants in error.

John K. Speck and Charles W. Harrison, both of Oklahoma City, amici curiae.

LUTTRELL J.   On January 19, 1944, plaintiff, Parrish & Clark, a copartnership, were notified by Oklahoma Employment Security Commission of an assessment for contributions under the Employment Security Act, covering the period from January 1, 1944, to March 31, 1944.   The assessment was based on the statutory 2.7 per cent of the pay roll of plaintiff.   Plaintiff promptly filed a protest against this assessment, claiming that its contribution should be based on a rate of one per cent of the pay roll.   This protest was heard by the commission and denied, and the original assessment affirmed.   Plaintiff appealed to the district court of Tulsa county, and upon a hearing the district court found that the assessment made by the Security Commission was erroneous, and that plaintiff was entitled to a reduced contribution rate of one per cent.   The trial court set aside the order of the Commission and ordered that all sums paid by plaintiff to the Commission under said assessment in excess of one per cent of its pay roll be refunded.   The Commission appeals.

At the hearing before the commission the facts were stipulated.   From the stipulation it appears that prior to January 1, 1944, Parrish, Inc., had been engaged in the automobile business in Tulsa, having been since 1936 and up to January 1, 1941, distributors of Packard automobiles.   On January 1, 1941, it became distributor for Dodge and Plymouth automobiles and trucks.   In 1940 it took over the agency for Chriscraft boats.   In 1942 it organized and operated a machine and tool business as a division of its business, and this division of its business apparently experienced a rapid growth.   On January 1, 1944, a partnership was formed called Parrish & Clark, which took over the

automobile distribution business of Parrish, Inc., leaving the corporation with the machine and tool business and the Chriscraft boat business. The parties agree that at the time of the separation of its business, Parrish, Inc., had earned a contribution rate of one per cent of its pay roll. It is further stipulated that the partnership of Parrish & Clark was composed of partners who were stockholders in Parrish, Inc., or members of their immediate families, and that the same persons owned or controlled both Parrish, Inc., and Parrish & Clark; that the two businesses occupied separate floors of the same building and that Parrish & Clark upon its organization continued in business at the same location with the same personnel and business methods which had previously been employed by Parrish, Inc. At the time the automobile distributing agency was taken over by Parrish & Clark it filed a voluntary election to become an employer under the Employment Security Act. During the period covered by the assessment Parrish, Inc., and Parrish & Clark each employed more than eight persons in their respective businesses.

The decisive question for determination is whether under the provisions of 40 O.S. 1941 §217(c) (9), plaintiff succeeded to and was entitled to credit for the experience benefits and contribution rate theretofore enjoyed by Parrish Inc., because of the transfer to it of one branch of the business theretofore operated by Parrish, Inc. Both before the commission and the trial court it claimed to be entitled to the same reduced contribution rate as that accorded Parrish, Inc., and the trial court so held.

The commission contended in the trial court, and contends on appeal, that Parrish & Clark was not entitled to the same rate as Parrish, Inc., for the reason that it did not acquire the entire business of Parrish, Inc., but that, having acquired only a portion thereof, the rate theretofore earned by Parrish, Inc., did not apply to it, and

that it was required to pay at the rate of 2.7 per cent on its pay roll.

Section 217(c) (9) provides:

"Any individual or employing unit which acquires the organization, trade, or business, or all of the assets thereof, of an employer (whether or not such acquiring individual or employing unit was an 'employing unit' within the meaning of this Act prior to such acquisition), excepting in any such case, any assets retained by such employer incident to the liquidation of his obligations, and in respect to which the Commission finds (i) immediately after such change the business and activity of the predecessor employing unit or units are conducted solely through the successor employing unit, (ii) immediately after such change, such successor is directly or indirectly owned or controlled by legally enforceable means by the same interests or substantially the same interests as directly or indirectly owned or controlled the predecessor employing unit immediately prior to such acquisition (and for the purpose of this Subsection ownership, directly or indirectly, by the same interests or substantially the same interests of the majority of the voting shares of an employing unit shall, among other things constitute prima facie evidence of control by legally enforceable means) and (iii) the consideration of such two or more employing units as a single employing unit for the purposes of this Section will not tend to defeat or obstruct the object and purpose of this Law, shall stand in the position of such predecessor employing unit in all respects, including the predecessor's actual contribution and benefit experience, annual payrolls, and liability for current or delinquent contributions, interest and penalty, and contribution rate, whether more or less than two and seven-tenths per cent (2.7%).

"Any employing unit which acquires all of the trade, organization or business of an employer, or who acquires all of the assets of an employer (excepting in such case any assets retained by such employer incident to the liquidation of his obligations), and who continues the operations of the prede-

cessor as a going business, shall acquire the merit rating account of such predecessor employer, including the predecessor's actual contribution and benefit experience, annual payrolls, and liability for current or delinquent contributions, interest and penalty, and contribution rate, whether or not such rate is more or less than two and seven-tenths per cent (2.7%)."

40 O.S. 1941 §229(e) defines "employer" as follows:

"(1) Any employing unit which for some portion of a day, but not necessarily simultaneously, in each of twenty different calendar weeks, whether or not such weeks are or were consecutive within either the current or the preceding calendar year, (and for the purpose of this definition if any week includes both December 31st, and January 1st, the days up to January 1st, shall be deemed one calendar week and the days beginning January 1st another such week) has or had in employment, eight or more individuals (irrespective of whether the same individuals are or were employed in each such day); provided, however, that if the Federal Congress shall by amendment to Section 1607(a), Chapter 9 of the Internal Revenue Code, as amended, redefine the term employer to include employing units not qualified as employers under this Subsection, all the provisions of this Act shall be applicable to all such employing units; or
. . .

"(4) Any employing unit which together with one or more other employing units, is owned or controlled (by legally enforceable means or otherwise) directly by the same interest, or which owns or controls one or more other employing units (by legally enforceable means or otherwise), and which, if treated as a single unit with such other employing unit, would be an employer under Paragraph (1) of this Subsection; . . .".

The determination of the question presented depends upon the correct construction of the first paragraph of section 217(c) (9) above quoted, since the second paragraph deals only with the transfer of the entire business or assets of an employer to another employing unit or employer. The Commission contends that the first paragraph applies only to the reorganization of an entire business, by which two or more separate enterprises operated by different employing units owned or controlled by the same interests, are merged or consolidated in a successor unit. This contention loses force when the provisions of the second paragraph are considered, since the provisions of the second paragraph apply without distinction to all cases where one employing unit takes over or absorbs the entire business theretofore operated by another. If, in each case, those covered by the first paragraph, as well as those covered by the second, the statute required that all of the business of an employing unit theretofore operating one or more enterprises must be transferred to the successor employing unit to enable it to obtain the reduced rate, it would seem that the first paragraph would be unnecessary, since the situation would then be within the provisions of the second paragraph. The Commission calls attention to provision (i) of the first paragraph, which requires that after such change the business and activity of the predecessor employing unit shall be conducted solely through the successor employing unit. But this provision could well apply to the business or activity transferred to the successor employing unit. It does not require that all the business of the predecessor employing unit be so conducted. Each paragraph provides for the continuation of the business acquired by the successor employing unit.

We have not heretofore attempted to apply the provisions above quoted to a state of facts in any wise similar to the situation here involved, nor has any case been cited by counsel where such a situation has been considered by the courts under a similar statute. The Commission cites a number of cases, such as White v. State of Texas (Tex. Civ. App.) 197 S.W. 2d 389; Ned's Auto Supply Co. et al. v. Michigan Unemployment Compensation Commission,

313 Mich. 66, 20 N.W. 2d 813, and the recent case of Cartersville Candlewick, Inc., v. Huiet 204 Ga. 609, 50 S.E. 2d 647, but examination of all these cases discloses that the statute involved was similar to the second paragraph of section 217(c) (9) above quoted, and that no provision comparable with the first paragraph was considered. The Commission further argues that the statute is an exemption statute and must be strictly construed against plaintiff. Whether it is such is, we think, immaterial, since if plaintiff does not bring itself within the provisions of the statute it is not entitled to the reduced rate of compensation which it claims.

We have carefully considered the first paragraph of section 217 (c) (9) above set forth, together with section 229(e), and have concluded that the contention of the Commission cannot be upheld, and that the judgment of the trial court, that under the first paragraph of the statute above set forth plaintiff was entitled to succeed to the experience benefits of Parrish, Inc., and to enjoy the same contribution rate, was correct.

While the language of the first paragraph of section 217(c) (9) is somewhat indefinite, its purpose is reasonably plain. Evidently the Legislature in enacting it intended to permit or authorize the consolidation under one employing unit of two or more enterprises theretofore conducted by separate employing units owned or controlled by the same interests owning and controlling the employing unit under which they were consolidated. This for the reason that the law provides that after the change the business and activity of the predecessor employing unit *or units* are to be conducted by the successor unit. Evidently, also, because it did not require the transfer of the entire business, the Legislature intended to permit an employer to divide the business theretofore conducted by him into one or more separate businesses, and transfer a part to another employing unit owned or controlled by him, and that in such case, so long as the successor unit was owned and controlled by the same interests which owned and controlled the predecessor unit, so that the two could be considered or treated as a single unit, under section 229 (a) (4), supra, the successor unit should not lose the benefit experience or contribution rating theretofore established by the predecessor unit, but that the two should be considered a single unit. This is a reasonable construction, since the Legislature had a right to assume that where the predecessor and successor units were both owned and operated by the same interests, there would not be such a change in the methods of operation, or policy of conducting the transferred enterprise, which would render it unwise or contrary to the purpose of the Act to permit it to have the benefit of the contribution rate theretofore earned by its predecessor. The change in the structure of the business, by the division thereof, and the transfer of a separable portion to the successor unit, would be a change in form or legal identity only, since the ownership and control of the successor unit would remain in the same interests owning and controlling the predecessor unit.

Thus a chain grocery having stores in a number of cities, all under the management of a single employing unit, might, for reasons which it deemed sufficient, desire to operate those in a certain city under a separate employing unit owned and controlled by the same interests which operated the entire chain. This, the statute, as we construe it, would permit. If, after having done so, it was found that such action was detrimental to the business, the owners of the controlling interests could retransfer such stores to the management or employing unit which had formerly operated them. Such transfers would not affect the contribution rates of either employing unit so long as the other conditions required by the statute were met.

The statute did not permit the sale of a divisible portion of the business of

an employer or employing unit to another employing unit unless such other employing unit was owned or controlled by the same interests owning and controlling the predecessor. It was not until the amendment of 1947 (S.L. 1947, Title 40, ch. 6, p. 299), that such a transfer was permitted. If the entire business of an employer was transferred, such transfer was covered by the provisions of the second paragraph of the statute, and in such case it was immaterial whether the successor unit was owned or controlled by the same interests owning or controlling the predecessor unit.

The trial court held that while the Commission did not specifically find that the three requisites specified in the first paragraph of the statute existed in the instant case, that they did in fact exist, and that the transfer from Parrish, Inc., to plaintiff fully complied with the requirements of the statute. We agree with this finding. From the stipulation of facts it appears that plaintiff was owned and controlled by the same interests owning and controlling Parrish, Inc.; that the automobile distributing business theretofore conducted by Parrish, Inc., was conducted solely by plaintiff, and that to consider the two employing units as a single unit, and allow each the rate theretofore earned by Parrish, Inc., would not defeat or obstruct the purpose of the law.

Affirmed.

DAVISON, C.J., and WELCH, CORN, GIBSON, HALLEY, and O'NEAL, JJ., concur.